**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATIONAL PARKS | : | |
| CONSERVATION ASSOCIATION, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 08-5578 |
| | : | |
| LOWER PROVIDENCE TOWNSHIP, | : | |
| PENNSYLVANIA, | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| NATIONAL CENTER FOR THE | : | |
| AMERICAN REVOLUTION, | : | |
| Intervenor Defendant. | : | |

April _7__, 2009                              Anita B. Brody, J.

<u>MEMORANDUM AND ORDER</u>

## I.  Introduction

On September 6, 2007, Lower Providence Township (the "Township") adopted a zoning ordinance (the "Ordinance") that permits development on private land within the boundaries of Valley Forge National Historical Park (the "Park").  On December 1, 2008, the National Parks Conservation Association and five individual plaintiffs (collectively "Plaintiffs") filed a complaint against the Township asking for 1) a declaration that the ordinance is preempted by federal law and is illegal under state law, and 2) injunctive relief against the implementation of the Ordinance.  On December 24, 2008, the Township moved to dismiss the complaint on the grounds that 1) the Court lacks subject matter jurisdiction; 2) the Anti-injunction Act bars Plaintiffs' claims; and 3) the Court should abstain under the <u>Younger</u> doctrine.  On December 31, 2008, I granted the

1

National Center for the American Revolution's ("ARC") Unopposed Motion to Intervene as Defendant.  On January 20, 2009, ARC filed a Motion to Dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and (6) alleging that 1) the Court lacks subject matter jurisdiction; 2) Plaintiffs lack standing to bring a preemption claim; 3) Plaintiffs are collaterally estopped from re-litigating the claims previously decided by the zoning board; and 4) the Court should abstain under the <u>Younger</u> doctrine.  On March 18, 2008, I heard oral arguments only on the issue of <u>Younger</u> abstention.  In the following memorandum and order, I address the relevant arguments presented in both Motions to Dismiss as well as at the oral arguments, and Plaintiffs' responses to each.

## II.  Background[1]

On September 6, 2007, the Board of Supervisors of Lower Providence Township adopted Ordinance No. 561, which is the Ordinance contested in this action.  The Ordinance allows development on a privately-owned parcel of land surrounded on 96% of its borders by federally-owned land that is part of the Park.  After the Ordinance was passed, ARC purchased the land.  On October 23, 2008, the Board of Supervisors granted final approval on ARC's land development plan pursuant to the Ordinance.  ARC's plans for development include building a museum, a conference center, a hotel, and parking lots.  These plans will result in development of over 55 acres of the 78-acre land parcel and 52% of the vegetation will be removed.[2]

---

[1] All facts were considered in the light most favorable to Plaintiffs, the non-moving party.

[2] The Ordinance allows even more development than is proposed in ARC's plan.

The individual plaintiffs and many members of the National Parks Conservation Association live near the Park and enjoy it regularly.  Plaintiffs claim that ARC's planned development on this parcel of land will impact their ability to use and enjoy the Park.  In particular, Plaintiffs contend that the development will damage views, wetlands, and archeological resources as well as cause light and noise pollution.

In October 2007, Plaintiffs appealed the adoption of the Ordinance to the Township's Zoning Hearing Board ("ZHB"), which was comprised of five members appointed by the Board of Supervisors.  The ZHB hears requests for exemptions and variances from zoning ordinances as well as substantive challenges to the validity of ordinances. 53 P.S. § 10909.1.  In their appeal, Plaintiffs asserted that the Ordinance is preempted by federal law and constitutes illegal spot-zoning under Pennsylvania law. That appeal was dismissed as premature, except as to one procedural objection, which was denied on April 11, 2008.

In June 2008, Plaintiffs filed a second appeal with the ZHB asserting the same grounds for relief as in their first appeal, including the claim of federal preemption.  On October 30, 2008, the ZHB rendered its decision in favor of ARC on every legal argument raised, with the exception of standing.   ARC's counsel's unchallenged statement at oral argument averred that the ZHB conducted 12 hearings, heard 65 hours of testimony, and issued an 82 page opinion including over 300 findings of fact as well as conclusions of law.  On December 1, 2008, Plaintiffs filed this action in district court and a notice of appeal[3] in the Court of Common Pleas for Montgomery County, Pennsylvania

---

[3]  Plaintiffs allege that they filed the District Court complaint and then later that same day filed a notice of appeal from the ZHB decision in the Court of Common Pleas.

3

(No. 08-34173)[4].  Plaintiffs then asked the Court of Common Pleas to stay the state court

proceedings so that the federal action could go forward while preserving their state court

appellate rights.  The Court of Common Pleas denied the request for a stay and on

January 6, 2009, Plaintiffs filed a praecipe to dismiss that action.  The defendants

opposed the dismissal because they had a cross-appeal on the basis of standing pending

and Plaintiffs have since filed a motion to dismiss.  That motion is still pending.  This

case will be transferred to state court under the Younger abstention doctrine.

### III.  Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to

dismiss if it lacks subject-matter jurisdiction to hear a claim.  "A motion to dismiss for

want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a

jurisdictional matter."  Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007).  Under

Federal Rule of Civil Procedure 12(b)(6), a court must grant a motion to dismiss if the

plaintiff fails "to state a claim upon which relief can be granted."  In deciding a motion to

dismiss pursuant to Rule 12(b)(6), the court must accept as true the well-pleaded

allegations of the complaint and draw all reasonable inferences in the plaintiff's favor.

---

[4]  Plaintiffs also filed two other complaints in the court of common pleas, neither of which raised the issue of preemption.  The first was filed prior to the federal action (No. 08-20438) and contested the votes by the Township Board of Supervisors on ARC's approval of its preliminary land development plan on the grounds that this violated the automatic stay pending the ZHB proceedings.  According to Plaintiffs, this action became moot after the ZHB's ruling and the Board of Supervisor's renewed voting on the development plan.  Two days after the federal action was filed, on December 3, 2008, Plaintiffs filed another action in state court (No. 08-34551) appealing the Board of Supervisor's approval of ARC's land development plans.  After the filing of the federal action, Plaintiffs asked the court to dismiss both state actions in order to proceed in the federal forum.

Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations omitted).

## IV.  Discussion

### A.  Federal Question Jurisdiction

Plaintiffs contend that this Court has subject-matter jurisdiction over the action based on their claim that the Ordinance is preempted by federal law, specifically 16 U.S.C. § 1 *et seq*., which established the National Park Service:

> There is created in the Department of the Interior a service to be called the National Park Service, which shall be under the charge of a director, who shall be appointed by the President, by and with the advice and consent of the Senate. The Director shall have substantial experience and demonstrated competence in land management and natural or cultural resource conservation. The Director shall select two Deputy Directors. The first Deputy Director shall have responsibility for National Park Service operations, and the second Deputy Director shall have responsibility for other programs assigned to the National Park Service. The service thus established shall promote and regulate the use of the Federal areas known as national parks, monuments, and reservations hereinafter specified, except such as are under the jurisdiction of the Secretary of the Army, as provided by law, by such means and measures as conform to the fundamental purpose of the said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1 *et seq*.

Plaintiffs allege that the Ordinance interferes with Congress' objectives in establishing the National Park Service and is therefore preempted by federal law.

ARC contends that federal preemption alone does not give rise to federal question jurisdiction.   ARC cites Fleet Bank v. Burke, 160 F.3d 883 (2d Cir. 1998) (Newman, J.), numerous times to support the contention that "preemption is a defense and cannot be invoked affirmatively to create subject matter jurisdiction" (ARC Motion to Dismiss, p. 10).  The Fleet opinion provides a thorough overview and analysis of the law regarding federal question jurisdiction in a preemption claim.[5]   However, ARC fails to discuss the Fleet court's conclusion that a plaintiff "may invoke federal question jurisdiction to adjudicate an unadorned claim of federal preemption, at least in a suit seeking an injunction and possibly only a declaratory judgment . . . ."  160 F.3d at 892.  ARC also fails to mention the Fleet court's extensive discussion of the Supreme Court's opinion in Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 (1983), in which the Court held that:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.   A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, this presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

---

[5]  The novel aspect of the Fleet decision is the holding that federal courts do not have jurisdiction to decide whether a federal law preempts a state law *if*, in order to do so, the court must *first interpret* the state law.  160 F.3d at 892-93.  If a state court were to interpret the state law as not conflicting with federal law, the preemption claim would be moot.  Additionally, The Fleet court permitted the plaintiff to "reserve the preemption issue from state court adjudication, and come to federal court in the event that the state court construes state law adversely to it."  Id. at 893.  In the case at hand, neither party disputes the meaning of the Ordinance; therefore this Court need not interpret the state law in order to rule on the merits of the preemption claim.

Of course, here Plaintiffs are asking for both an injunction and a declaratory judgment

based, in part, on the claim that a state regulation is preempted by federal law.  The

Plaintiffs seek a declaratory judgment and injunctive relief from the Ordinance on the

basis that it is preempted by federal law; therefore, they have presented a federal question

and established subject-matter jurisdiction.

## B.  Standing

Article III of the Constitution limits the power of federal courts to resolve cases

or controversies.  "A declaratory judgment or injunction can issue only when the

constitutional standing requirements of a 'case' or 'controversy' are met."  St. Thomas-

St. John Hotel & Tourism Ass'n, Inc. v. U.S. Virgin Islands, 218 F.3d 232, 241 (3d Cir.

2000).  Requests for declaratory relief cannot hinge solely on hypothetical or contingent

questions.  Id. (citations omitted).   The case or controversy requirement is met when

"there is a substantial controversy,[6] between parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id.

(citations omitted).  Courts ensure that the case or controversy requirement is met by

following several justiciability doctrines, including standing, ripeness, mootness, the

---

[6]  ARC mentions the "substantial" case or controversy requirement in their discussion of the need for a "substantial" question of federal law to establish federal question jurisdiction.  Once again, ARC mis-characterizes Fleet in saying, "[a] case or controversy must be substantial.  Some courts hold that preemption claims under the Supreme Clause do not present 'substantial' constitutional issues.  See Fleet, 160 F.3d at 883. Absent a federal statute creating a cause of action, a claim is not substantial." (ARC Motion to Dismiss, p. 12-13).  The first half of the quoted sentence in Fleet (omitted by ARC) indicates that some courts have found that preemption claims under the Supremacy Clause do not present substantial constitutional issues for the purposes of Pullman abstention.  160 F.3d at 890.  ARC's use of this citation is misleading and irrelevant to an analysis of the case or controversy requirement.

political question doctrine, and the prohibition on advisory opinions.  Toll Bros., Inc. v. Township of Readington, 555 F.3d 131, 137 (3d Cir. 2009).

The doctrine of standing helps identify which disputes are justiciable under the case or controversy requirement.  "As an incident to the elaboration of this bedrock [case or controversy] requirement, this Court has always required that a litigant have "standing" to challenge the action sought to be adjudicated in the lawsuit." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982).  At a minimum, there are three elements needed to establish constitutional standing under Article III: 1) injury-in-fact, 2) causation (or traceability), and 3) redressability.  Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).   Both ARC and the Township contend that Plaintiffs do not have standing to bring this action because Plaintiffs' injuries are speculative.  ARC also asserts that there is no causal connection between the ordinance and the injury and that invalidating the ordinance would not redress Plaintiffs' prospective injuries.

**1.  Injury**

To satisfy the first prong of the standing doctrine, a plaintiff must have suffered a particularized injury that is concrete; it must be actual or imminent and cannot be hypothetical.  Toll Bros., 555 F.3d at 137.  A claim of harm to plaintiffs' aesthetic and recreational interests is sufficient to establish injury for purposes of standing.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 169 (2000).  When plaintiffs assert a claim based on threatened or future injury, however, they must show that the injury is so imminent as to be "certainly impending." Pub. Interest Research Group v. Magnesium Elektron, Inc., 123 F.3d 111, 122 (3d Cir.1997) (quoting Whitmore v. Ark.,

495 U.S. 149, 155-58 (1990)).  Here, the challenged Ordinance itself is not the injury

Plaintiffs complain of, but, by allowing development on that parcel of land, the

Ordinance increases the risk that Plaintiffs aesthetic and recreational interests will be

harmed.

Numerous courts have held that increased risk of future injury is sufficient to

establish imminency of injury for purposes of standing.  See Baur v. Veneman, 352 F.3d

625, 633 (2d Cir. 2003) (holding that plaintiff had standing based on increased risk of

contracting an illness and citing the following:

> Friends of the Earth, Inc. v. Gaston Copper Recycling, Corp., 204
> F.3d 149, 160 (4th Cir.2000) (en banc) (concluding that "[t]hreats
> or increased risk constitutes cognizable harm" sufficient to meet
> the injury-in-fact requirement); Central Delta Water Agency v.
> United States, 306 F.3d 938, 947-48 (9th Cir.2002) (holding that
> "the possibility of future injury may be sufficient to confer
> standing on plaintiffs" and concluding that plaintiffs could proceed
> with their suit where they "raised a material question of fact ... [as
> to] whether they will suffer a substantial risk of harm as a result of
> [the government's] policies"); Johnson v. Allsteel, Inc., 259 F.3d
> 885, 888 (7th Cir.2001) (holding that the "increased risk that a
> plan participant faces" as a result of an ERISA plan administrator's
> increase in discretionary authority satisfies Article III
> injury-in-fact requirements); Walters v. Edgar, 163 F.3d 430, 434
> (7th Cir.1998) (reasoning that "[a] probabilistic harm, if nontrivial,
> can support standing"), cert. denied, 526 U.S. 1146, 119 S.Ct.
> 2022, 143 L.Ed.2d 1033 (1999); Mountain States Legal Found. v.
> Glickman, 92 F.3d 1228, 1234-35 (D.C.Cir.1996) (recognizing that
> an incremental increase in the risk of forest fires caused by the
> Forest Service's action satisfied Article III standing requirements)).

In a case involving increased risk of harm, the plaintiff must also show that the

harm is probable in order to establish standing.  There must be a "credible threat of

harm" to establish injury based on exposure to enhanced risk.  Baur, 352 F.3d at 637

(citing Central Delta Water Agency, 306 F.3d at 950).  For example, in Central Delta

Water Agency, the plaintiffs contended that the U.S. Bureau of Reclamation's method of

operating a water management unit was likely to raise the salinity of the water. 306 F.3d

at 947.   The Ninth Circuit held that plaintiffs had established an injury sufficient to

confer standing even though the injury was merely threatened and had not yet occurred.

Id. at 948.  That court cited the Seventh Circuit in holding that "even a small probability

of injury is sufficient to create a case or controversy - to take the suit out of the category

of the hypothetical - provided of course that the relief sought would, if granted, reduce

the probability." Id. (citing Village of Elk Grove v. Evans, 997 F.2d 328, 329 (7th Cir.

1993)).  The Ninth Circuit also found that the possibility that defendants might change

their conduct is not the type of contingency that makes a threat of injury non-credible.

Id. at 950.

The contingency of ARC's development does not make Plaintiffs' injury too

speculative to establish standing.  Although this case involves challenging a zoning

ordinance that *permits* development, courts have held that in the opposite scenario

developers have standing to challenge zoning restrictions that *limit* development.  The

key standing issue that courts dealt with in those cases was whether or not a developer

could establish a particularized injury when it was uncertain whether the development

would occur even without the zoning restriction.  In Village of Arlington Heights v.

Metropolitan Housing Development Corp., the Supreme Court found that a developer

had standing to challenge a denial of rezoning even though the requested relief would not

"guarantee" the project's completion, which was dependent on numerous contingencies,

including financing.  429 U.S. 252, 261 (1977).  Because the developer had a "detailed

and specific" plan, the Court held that the plaintiff had the "requisite personal stake in the

controversy." Id. at 261-62.  Likewise, the Third Circuit recently found that a developer

with an option contract had standing to challenge a zoning ordinance that prohibited a

planned development.  Toll Bros., 555 F.3d at 143.  The Third Circuit dismissed the

defendant's assertion that the claimed injury was too abstract and uncertain to establish

standing, based in part on the developer's property interest and "detailed and specific"

plan for the property.  Id. at 141.

The Township and ARC contend that Plaintiffs present no substantial controversy

because their injury is speculative: they cannot know whether ARC's proposed project

will actually impact Plaintiffs.  Defendants also claim that the challenged Ordinance does

not compel or authorize ARC's proposed development and that ARC still needs to get

final land development approval, a state permit, federal approval, and a building permit

before beginning to develop the land.  Plaintiffs respond that "ARC has obtained

preliminary and in part final approvals for its land development plan under the

ordinance."  (Pl.'s Resp. to the Township's Mot. to Dismiss, at 29.)  Plaintiffs anticipate

that their aesthetic and recreational interests will be harmed by development permitted by

the ordinance.

Here, the issues for purposes of standing are whether the Ordinance increases the

risk of harm to Plaintiffs and whether this harm is probable.  Although ARC may still

have a few obstacles to starting construction, it is clear that the Ordinance greatly

increases the risk that Plaintiffs will be harmed by development permitted by the

Ordinance.  Plaintiffs have also established that this harm is probable because it is likely

that ARC will be able to get final approval and the necessary permits to build.  If, in

contrast, the Ordinance had passed but no party had purchased the land in question, or if

ARC had no plans to build on the land, Plaintiffs would likely not be able to show a high enough probability of harm to establish standing.  Because Plaintiffs allege that ARC has extensive development plans, preliminary approval, and "in part final approval" for these plans, however, they have sufficiently shown that there is a credible threat of harm.  The fact that ARC may not be able to carry through with this development is not a sufficient contingency to erase the threat and probability of harm to Plaintiffs.  Here, ARC has a "detailed and specific" plan for development that is permitted by the zoning Ordinance. Toll Bros., 555 F.3d at 139.  This is sufficient to establish an injury for standing purposes even if that development is contingent on other factors.  The injury requirement of standing is met because the Ordinance substantially increases the risk that Plaintiffs' aesthetic and recreational interests will be harmed imminently.

**2. Causation**

In order to have standing, plaintiffs must allege a causal connection between the injury and the conduct objected to.  Lujan, 504 U.S. at 560.  "If the injury-in-fact prong focuses on *whether* the plaintiff suffered harm, then the traceability prong focuses on *who* inflicted that harm."  Toll Bros., 555 F.3d at 142 (emphasis in original).  Essentially, the plaintiff must show that the challenged action has at least an indirect causal relationship, or a "fairly traceable connection," to the alleged injury.  Id.  ARC contends that the Ordinance cannot be traced to Plaintiffs' injury, which they characterize as the Park Service's inability to manage the Park.  The injury that Plaintiffs allege, however, is that ARC's proposed development will harm their aesthetic and recreational interests related to the park.  Injury based on land development can be fairly traced to a zoning

ordinance permitting such development; therefore, Plaintiffs have established the causation element of standing.

**3. Redressability**

Finally, plaintiffs must show a "substantial likelihood" that the requested relief will remedy the alleged injury.  Toll Bros., 555 F.3d at 143.  Plaintiffs need not *guarantee* that a decision in their favor will alleviate the harm.  Id.  As discussed above, in Arlington Heights, the Supreme Court held that the redressability requirement was satisfied even though it was uncertain that the developer would be able to complete the project if the zoning were enjoined.  429 U.S. at 261.  The Arlington Heights Court said that all developments are subject to some uncertainties, but because it was more likely than not that the developer would be able to complete the project, redressability was established.  Id. The Third Circuit similarly found that the developer's ability to walk away from the planned project does not defeat redressability.  See Toll Bros., 555 F.3d at 143 ("The relevant question is not whether Toll Brothers *might* walk away from its development plans after receiving a favorable decision; the relevant question is whether it is *likely* to do so.") (emphasis in original).

ARC claims that Plaintiffs cannot establish redressability because the land in question could be developed in some manner even absent the Ordinance.  Plaintiffs in this case do not need to show that absent the challenged Ordinance, no development could ever occur on the property.  Nor do Plaintiffs need to show that a favorable decision in this case would ensure that the property would remain undeveloped forever. The question, instead, is whether it is *more likely* that the land in question will remain undeveloped, or less developed, if the Ordinance is struck down.  I find that Plaintiffs

have established that if the Ordinance were invalidated, there is a substantial likelihood of their injury being redressed.  Plaintiffs have established injury, causation, and redressability, and therefore have standing to challenge the Ordinance.

## C.  Abstention under the <u>Younger</u> doctrine

In <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court held that federal courts should not enjoin state criminal proceedings unless necessary to prevent irreparable injury.  <u>Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.</u>, 477 U.S. 619, 627 (1986).  This decision was based on the Supreme Court's respect for the fundamental role of states in our federal system.  <u>Id</u>.  Since <u>Younger</u>, the Supreme Court has expanded these principles of comity and federalism to state civil proceedings and state administrative proceedings that concern important state interests, provided the plaintiff has a full and fair opportunity to litigate the federal claim.  <u>Id</u>.  Federal courts may abstain from exercising jurisdiction over a particular claim if a federal court decision on that claim would "offend principles of comity by interfering with an ongoing state proceeding."  <u>Addiction Specialists. Inc. v. Twp. of Hampton</u>, 411 F.3d 399, 408 (3d Cir. 2005).[7]  Federal courts should abstain from interfering with state court proceedings under the <u>Younger</u> doctrine if the state proceedings 1) are ongoing and judicial; 2) implicate important state interests; and 3) provide an adequate opportunity to raise federal claims.  <u>See Addiction Specialists</u>, 411 F.3d at 408 (applying the test mandated

---

[7]  Abstention from exercising federal jurisdiction is the exception, not the rule, and should only be invoked in rare instances.  <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 705 (1992).

by the Supreme Court in <u>Middlesex County Ethics Comm. v. Garden State Bar Assoc.</u>, 457 U.S. 423, 432 (1982)).

Before applying the facts of the case at hand to these three prongs, it is helpful to briefly discuss a recent, very similar, precedential case.  The Third Circuit ruled in a case involving zoning that began with state proceedings and was then taken to federal court, that abstention was appropriate as to some of the claims.   <u>Addiction Specialists</u>, 411 F.3d 399.  In <u>Addiction Specialists</u>, the owner of a methadone clinic challenged the Township of Hampton's zoning decision denying plaintiff's request to open a methadone clinic in a particular area.  <u>Id</u>.  The plaintiff initially challenged this decision in the Court of Common Pleas of Allegheny County and then, while that action was pending but stayed, filed a federal complaint alleging violations of the United States Constitution, the Pennsylvania Constitution, the ADA, and the RA.  <u>Id</u>. at 404.  The <u>Addiction Specialists</u> court found that the district court was correct to abstain from deciding the plaintiff's claims for declaratory and injunctive relief challenging the validity of the Municipalities Planning Code ("MPC") and the zoning ordinance.  <u>Id.</u> at 415.  The court found that the state action was ongoing despite the fact that the state court stayed those proceedings, that the plaintiff's challenges to the legality of the MPC and the zoning ordinance implicated important state interests, and that the plaintiff's challenge to the validity of the MPC and the zoning ordinance was "fully available" in the land use appeal.  <u>Id.</u> at 409, 411.  As further demonstrated by the following analysis of the three <u>Younger</u> prongs, the case at hand fits squarely under <u>Addiction Specialists</u>, with the exception of the significance of the federal preemption claim discussed below.

**1. Ongoing and Judicial State Court Action**

**i. Judicial State Court Action**

Younger abstention is only appropriate if the underlying state proceeding is judicial in nature and not merely legislative.  New Orleans Pub. Serv. Inc. v. Council of City of New Orleans ("NOPSI"), 491 U.S. 350, 368 (1989).  In NOPSI, the Court held that Younger abstention was inappropriate because the proceedings at issue merely entered a final rate order, which was essentially a legislative act.  Id. at 371.  In contrast, a judicial proceeding "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist."  Id.  Here, the ZHB heard days of testimony, applied the facts asserted to existing law to decide the merits of Plaintiffs' federal preemption claim and state law spot-zoning claim, and issued an opinion explaining their ruling.  This proceeding was clearly judicial in nature.  The NOPSI Court also points out that Younger abstention should not be applied to legislative decisions because, for example, a litigant could bring a facial challenge to an allegedly unconstitutional zoning ordinance directly to federal court.  NOPSI, 491 U.S. at 372; see County Concrete Corp., v. Town of Roxbury, 442 F.3d 159, 164 (3d Cir. 2006) (explaining that facial challenges alleging that any application of a regulation is unconstitutional are immediately ripe and the finality rule requiring an appeal to the ZHB does not apply).  Here, however, Plaintiffs did not choose to bring their facial challenge to the Ordinance directly to federal court, as they could have, but instead sought quasi-

judicial review in front of the ZHB.  After an adverse ruling before the ZHB, Plaintiffs

filed for federal intervention and state appellate review on the same exact day.[8]

**ii.  Ongoing State Court Action**

    Younger abstention is only appropriate if there is a pending, or ongoing, state

court action.  Here, Plaintiffs filed their federal complaint and their state court appeal on

the same day.  Plaintiffs then asked the state court to stay their state appeal pending the

outcome of the federal action, and when this was denied, asked the state court to dismiss

the state action.  Plaintiffs ask this Court to look to whether or not the state proceedings

are pending at the time of the abstention analysis (instead of strictly at the time of the

filing of the federal action) and assert that because they have asked the state court to

dismiss the action, there are currently no ongoing state proceedings.[9]  (Pl.'s Resp. to

ARC's Mot. to Dismiss at 23.)  The fact that the federal action was filed hours before the

state action is irrelevant to the pending state action prong of a Younger abstention

analysis.  See Ford Motor Co. v. Ins. Comm'r of the Commonwealth of Pa., 874 F.2d

926, 932 n. 8 (3d Cir. 1989) (explaining that Younger abstention extends to actions

---

    [8] If Plaintiffs had only an as-applied challenge to the Ordinance *and* had not appealed to the state court, it is likely that Younger abstention would be inappropriate. This is because the finality rule would have required Plaintiffs to appeal to the ZHB before seeking federal review.

    [9] Plaintiffs rely on Kentucky West Virginia Gas Company v. Pennsylvania Public Utility Commission to support their contention that voluntarily dismissing a state court action defeats a Younger abstention claim because there is no pending state action. 791 F.2d 1111 (3d Cir. 1986). In Kentucky West, however, the Third Circuit did not indicate that the voluntary dismissal of the state action meant that there was no pending state action. Id. at 1117. Instead, the Kentucky West court used this to evaluate the procedural posture of the case, which was one factor that counseled against the application of the Younger doctrine. Id.

where the filing of the federal action precedes the filing of the state action as long as no

substantive proceeding on the merits has occurred in federal court).

     The Third Circuit held that state proceedings are pending for <u>Younger</u> purposes

even if the state proceedings are stayed.  See <u>Addiction Specialists</u>, 411 F.3d at 409

("[b]ecause the whole point of Younger abstention is to stop federal interference with

state proceedings, it seems backwards to reject abstention because the state proceedings

have been stayed to allow the federal case to proceed.") (quotations omitted). Under the

Third Circuit's logic in <u>Addiction Specialists</u>, it is irrelevant, for the purposes of deciding

if a state action is pending, that the state action was stayed *in order for* the federal action

to proceed.  411 F.3d at 409.  In the case at hand, there is a pending state court action

under the Third Circuit's logic in <u>Addiction Specialists</u>.[10]  This is because Plaintiffs

---

[10]  Even if Plaintiffs had never filed a state court appeal, the state court proceedings would likely have been considered ongoing for <u>Younger</u> purposes because <u>Younger</u> abstention bars federal intervention in a state judicial proceeding in which a losing litigant has not exhausted his or her appellate relief.  <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 609 (1975).  The Third Circuit has further clarified that "[e]xhaustion of appellate remedies is required by *Younger* only when the federal proceedings seek effectively to annul the state judgment." <u>Marks v. Stinson</u>, 19 F.3d 873, 883 (3d Cir. 1994).  The exhaustion requirement also applies to appellate review of a state administrative agency decision: "federal intervention before a state court has had the opportunity to review an agency's decision is no less an 'aspersion on the capabilities and good-faith of state appellate courts,' and no 'less a disruption of the State's efforts to protect interests which it deems important." <u>O'Neill v. City of Philadelphia</u>, 32 F.3d 785, 791 (3d Cir. 1991)  (quoting <u>Huffman</u>, 420 U.S. at 608).  Because Plaintiffs chose to first challenge the Ordinance in front of the ZHB instead of coming directly to federal court, they were then required to exhaust their state court appellate remedies before seeking federal intervention.

admit that they asked the state court to stay and then dismiss the state proceedings *in order for* the federal action to proceed.[11]

At the time this suit was filed in federal court, the statutorily prescribed course of action for Plaintiffs was to appeal the ZHB's decision to the court of common pleas.[12] Plaintiffs did so and brought an identical appeal to the district court that same day. Plaintiffs now request that the state court dismiss their proceedings in order for the federal action to proceed.  Clearly, a ruling by this Court would interfere with the

---

[11]  At oral argument, Plaintiffs' counsel said that on the same day they filed the federal complaint they "filed an appeal from the Zoning Hearing Board challenge and we said to the [State] Court, as we said in our complaint here by the way, we are filing that State Court action only as a precaution in the event that you exercise abstention or otherwise declined to hear the case . . . . We're asking the State Court to stay proceedings until you've decided whether to accept jurisdiction."  (Transcript of March 18, 2009, Oral Argument, p. 46.).  Counsel later reiterated that they raised the preemption argument in the State Court and said "simultaneously, please stay your proceedings here because we want to litigate this in the Federal Court . . . . Once they made the argument about abstention . . . and once we lost the stay motion . . we dismissed it."  Id. at 48-49.

[12]  Article IX of the Pennsylvania statute governing municipal corporations states that "[e]very municipality which has enacted or enacts a zoning ordinance pursuant to this act . . . shall create a zoning hearing board."  53 P.S. § 10901.  Article X, which governs appeals, states that:

> [a]ll appeals from land use decisions rendered pursuant to Article IX shall be taken to the court of common pleas of the judicial district wherein the land is located . . . . [c]hallenges to the validity of a land use ordinance raising procedural questions or alleges defects in the process of enactment or adoption shall be raised by appeal taken directly to the court of common pleas of the judicial district in which the municipality adopting the ordinance is located . . . .

53 P.S. § 11002-A.

identical state court appeal.[13]  Therefore, I find that the state court action is ongoing for the purpose of Younger abstention.

## 2. Important State Court Interests

There is no question that zoning and land use issues are traditionally significant to states. Thus, it is often appropriate for federal courts to abstain from deciding land use issues. Addiction Specialists, 411 F.3d at 409.  Land-use policy is an area where "the tenets of federalism are particularly strong" - so strong, in fact, that the Third Circuit had to specifically point out that federal courts should not *automatically* abstain in cases involving land use regulation. Izzo v. Borough of River Edge, 843 F.2d 765, 769 (3d Cir. 1988).  As Justice Alito said when sitting on the Third Circuit, "[l]and-use decisions are matters of local concern" and a federal court should not act as a "zoning board of appeals." United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 402 (3d. Cir 2003) (holding that the "shocks the conscience" test was appropriate to evaluate whether executive conduct violated the substantive due process clause in a land-use decision).[14]  In land use cases, of course, an important state interest is involved only

––––––––––––––––––––––

[13]  In a recent case involving zoning the Third Circuit held that the district court should *not* have abstained from hearing a challenge to the zoning board's decision because the decision had been reviewed "extensively and with finality" by the state courts and therefore there was no pending or ongoing state action. Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006).  Of course, *after* receiving an unfavorable decision from the state courts on appeal, the Younger doctrine would not bar Plaintiffs from bringing their claims to federal court because there would be no pending state action. Id.

[14]  In United Artists, Justice Alito pointed out that the decision to apply the "shocks the conscience" test put the Third Circuit "in line" with other Courts of Appeals that declined to find substantive due process violations in cases involving land-use disputes:

if granting the requested relief would be "tantamount to invalidating the land use policies themselves." Addiction Specialists, 411 F.3d at 409.   Here, the requested relief is a declaratory judgment that the Ordinance is illegal and an injunction against the implementation of the Ordinance, which, if granted, would invalidate the land use policy in question.  Clearly, zoning and land use are areas of particular importance to states and to grant Plaintiffs' requested relief would invalidate the land use policy; thus the second prong of Younger has been met.

Merely finding an important state interest, however, does not end the court's analysis in cases, like this one, involving a preemption challenge under the *Supremacy Clause.* Zahl v. Harper, 282 F.3d 204, 210 (3d Cir. 2002).  Where preemption is the federal question presented, a court must weigh the federal interests that potentially preempt the state law against the state interests in the subject matter of the litigation:

> Although there is no absolute prohibition against abstaining whenever the Supremacy Clause is invoked, and claims of federal preemption per se are generally not entitled to more deference in the abstention calculus than other constitutional claims, the presence of such a claim requires us to balance the state interest
>
> ---
>
> *See, e.g.*, *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104-05 (8th Cir.1992) (holding that allegations that the city arbitrarily applied a zoning ordinance were insufficient to state a substantive due process claim, and stating in dicta that the "decision would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith.... A bad-faith violation of state law remains only a violation of state law."); *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 32 (1st Cir.1991) ("Even assuming that ARPE engaged in delaying tactics and refused to issue permits for the Vacia Talega project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label.").

United Artists, 411 F.3d at 402.

served by abstention against the federal interest asserted to have
usurped the state law.

Id. (citations omitted).

This weighing of interests does not require a court to delve into the merits of
preemption, but it does require a court to consider the significance of the federal interest
involved.  Hi Tech Trans, LLC v. New Jersey, 382 F.3d 295, 307 (3d Cir. 2004).  State
independence and notions of comity are less affected if a "federal court cuts off state
proceedings that entrench upon the federal domain."  Zahl, 282 F.3d at 210.  Abstention
is often inappropriate in preemption cases because preemption claims are "essentially
ones of federal policy, so that the federal courts are particularly appropriate bodies for the
application of preemption principles."  Hi-Tech, 382 F.3d at 307-08.  For example, a
frivolous, untenable, or meritless claim of preemption does not prevent a federal court
from abstaining under Younger if the three prongs of the test are met.  Furthermore,
under the logic of Zahl,  Younger abstention may be appropriate where there is a
preemption claim asserting a weak federal interest against a strong state interest.

Here, the ability for a state to regulate private land use outweighs the federal
interest demonstrated by a law that establishes the National Park Service to manage park
land.  The state interest served by abstention is the ability for states to control land use
and govern appeals of zoning hearing board decisions in state courts.  Regulating land
use has historically been within a state's power and is primarily an area of local concern.
On the other hand, the federal interest asserted arises under the law establishing the
National Park Service and charging the Service to "promote and regulate the use of the
Federal areas known as national parks . . .  to conserve the scenery and the natural and

22

historic objects and the wild life therein and to provide for the enjoyment of the same in such manner . . . ." 16 U.S.C. § 1.  Enacting a zoning ordinance that affects privately-owned land near a federally regulated park does not sufficiently "entrench upon the federal domain" to render abstention inappropriate.  Zahl, 282 F.3d at 210.

Furthermore, the federal interest in regulating the Park does not outweigh the state's interest in governing privately-owned land use because not only is the federal government uninvolved in this case, but Congress has not acquired or regulated the private land at issue.  Congress previously passed the Pennsylvania Battlefields Protection Act of 1999, which authorized the Secretary of the Interior to enter into an agreement with the Valley Forge Historical Society to build a Museum of the American Revolution on federal land within the boundaries of the Park.  16 U.S.C. § 410aa.  At oral argument, Plaintiffs contended that this act demonstrated the federal interest at issue. Actually, Congress could have legislated with regard to the private land adjacent to the park, but it chose not to and instead only legislated about building the museum on federal land.

Pennsylvania's interest in land use outweighs the federal interest expressed in an act establishing a National Park Service.  Here, private citizens are contesting an Ordinance allowing development on private land.  They allege that this development will interfere with the National Park Service's ability to regulate the Park.  The fact that the National Park Service neither initiated nor joined the suit undermines the assertion of a strong federal interest.[15]  A federal law governing park management does not create a

---

[15]  At oral argument Plaintiffs alluded to some kind of political pressure applied to the National Park Service to not join in the suit.  This is not relevant to my analysis.

sufficient interest to deprive a state of the ability to govern land use of privately-owned land and hear appeals of zoning hearing board decisions.

The fact that this case was privately initiated, as opposed to being initiated by the state, may counsel against abstention.  Ky. W. Va. Gas Co. v. Pa. Pub. Util. Comm'n., 791 F.2d 1111, 1117 (3d Cir. 1986).  The Third Circuit noted that the state's interests in the adjudication should be given less deference in a proceeding that is not initiated by the state.  Ford Motor Co., 874 F.2d at 933, n. 10 (3d Cir. 1989).[16]  Such decisions were intended to exclude essentially private controversies from a Younger abstention analysis, *but not to exclude cases*, as here, where "the *state's* interest in its proceeding is readily apparent."  Id.  (emphasis in original).  A number of courts have termed cases initiated by private parties as "remedial" and cases initiated by the state as "coercive."  This distinction is discussed further in Section C.4.

The identical claims raised in this federal action were first decided by the ZHB, and that decision was appealed to the court of common pleas as directed by statute.  Once a facial constitutional challenge to a zoning decision is brought to a zoning hearing board and appealed to the state court, the state court must be given the opportunity to review this decision, barring an overriding federal interest asserted in a preemption claim.  The preemptive federal interest asserted here is based solely on an act establishing a Park Service to oversee federal land.  This federal interest is relatively weak, especially as compared for example to the paramount federal interest in protecting constitutional rights.  Patsy v. Fla. Bd. of Regents, 457 U.S. 496 (1982).  This federal interest does not

---

[16]  Under this reasoning, perhaps a federal interest should be given less deference in a preemption claim when the federal government is not a party to the suit.

outweigh the state's ability to make local zoning decisions affecting privately-owned land.

### 3.  Opportunity to Raise Federal Claims

Because there was a pending state court action at the time when this federal complaint was filed and because this action involves important state court interests, this Court should abstain if Plaintiffs had an opportunity to raise their federal claims in front of the ZHB and on appeal to the court of common pleas.  Local zoning boards have authority under Pennsylvania law to hear substantive challenges to the validity of land use ordinances.  <u>Addiction Specialists,</u> 411 F.3d at 411 (citing 53 P.S. § 10109.1(a)(1)).  Courts of common pleas also have authority in land use appeals to invalidate local zoning ordinances.  <u>Id.</u> (citing 53 P.S.  § 11006-A).  Plaintiffs did raise facial challenges to the Ordinance based on federal preemption and Pennsylvania law in front of the ZHB, and had the opportunity to raise these same claims in the court of common pleas.

### 4.  Coercive vs. Remedial Proceedings

Unfortunately, in deciding whether or not to abstain under <u>Younger</u>, some courts have undermined the clear directive of the Supreme Court by introducing a theory of definitive resolution - a "remedial/coercive" analysis of the state court action.  To do so prevents a court from conducting an analysis of the three <u>Younger</u> abstention factors articulated by the Supreme Court.

A "coercive" proceeding is defined as one initiated by the state in order to enforce a state law in which the plaintiff in the federal action (the "federal plaintiff") is the defendant in the state action.  A "remedial" proceeding is one in which the federal plaintiff is also the plaintiff in the state action and seeks aid in redressing an error

committed by the state.  Some district courts and at least one appellate court have held that the first step in a Younger analysis, even before addressing the Supreme Court's three prongs, is to look at the nature of the underlying state proceeding to decide if it is remedial or coercive.  These courts have held that if the underlying state proceeding is "remedial," Younger abstention is *per se* inappropriate and there is no need to conduct any further analysis.  The Third Circuit and Supreme Court case law cited for this proposition, however, is confined to § 1983 actions.

In 1982, the Supreme Court said in Patsy v. Florida Board of Regents that because of the "paramount" federal interest in protecting constitutional rights, plaintiffs in § 1983 actions do not have to exhaust their state remedies before filing a federal suit. 457 U.S. 496 (1982).[17]  Thereafter, in Dayton Christian Schools, the Supreme Court determined that applying Younger to a § 1983 claim seeking to enjoin a state administrative proceedings is consistent with Patsy because, unlike in Patsy, the administrative proceedings in Dayton Christian Schools were coercive, they began before substantial federal involvement, and they involved an important state interest.  477 U.S. at 627, n. 2.

---

[17]  In Patsy, the court looked to the legislative history of § 1983 (including §1 of the Civil Rights Act of 1871) and determined that 1) Congress assigned federal courts a "paramount" role in protecting constitutional rights; 2) Congress believed that state authorities had been unwilling or unable to protect the constitutional rights of individuals or to punish those who violated theses rights; and 3) many legislators interpreted the civil rights act to provide concurrent forums.  457 U.S. at 503, 505, 506.  Because of this legislative history regarding the purpose of § 1983, the Court held that the plaintiff did not have to exhaust state remedies before seeking federal intervention.  Of course, the instant action does not involve a  § 1983 claim.

In 1991, in a footnote in <u>O'Neill v. City of Philadelphia</u>, the Third Circuit cited

<u>Dayton Christian Schools</u> to similarly differentiate <u>O'Neill</u> from <u>Patsy</u>.  32 F.3d 785,

791, n. 13 (3d Cir. 1991).   In <u>O'Neill</u>, the City of Philadelphia took coercive action to

enforce its traffic tickets and the court held that the plaintiffs were required to exhaust

state administrative and judicial remedies before bringing their § 1983 claims to federal

court.  <u>Id</u>.  The <u>O'Neill</u> court realized that this might appear to contradict <u>Patsy</u>, in which

the plaintiff brought a remedial action to vindicate an alleged civil rights violation by the

state and was not required to exhaust administrative remedies before bringing the case to

federal court.  <u>Id</u>.  In this <u>O'Neill</u> footnote, the Third Circuit differentiated between

"coercive" and "remedial" state proceedings to require exhaustion and find that the state

proceedings were "ongoing" for <u>Younger</u> purposes.  <u>Id</u>.  Even though the <u>O'Neill</u> court's

purpose in differentiating between "remedial" and "coercive" state proceedings was to

reconcile their holding with the principle that a plaintiff need not always exhaust

administrative remedies before bringing a §1983 action in federal court, some courts

have since interpreted this to mean that <u>Younger</u> abstention is automatically

inappropriate if the underlying state proceedings are "remedial," regardless of whether or

not the case at hand is a § 1983 action.[18]  The <u>O'Neill</u> footnote in no way indicates that

---

[18]  Some district courts have held that the coercive/remedial distinction is
dispositive and that federal courts should *never* abstain under <u>Younger</u> in a remedial case
even if the three requirements for <u>Younger</u> abstention have been met.  <u>See Gordon v.
East Goshen Township</u>, No. 08-4682, 2009 U.S. Dist. LEXIS 2416 at*26-7, ( E.D.Pa.
January 14, 2009) (holding that courts should only abstain under <u>Younger</u> if the state
proceedings are "coercive" and not "remedial" and citing a number of district court
opinions).  In <u>Gordon</u>, there was a pending lawsuit in state court prior to plaintiffs filing a
federal complaint, but the <u>Gordon</u> court held that <u>Younger</u> abstention was inappropriate
because the proceedings were remedial and did not conduct any further <u>Younger</u>
analysis.  <u>Id</u>. at *28.

abstention is *never* appropriate in non-§ 1983 "remedial" cases, particularly those in which the state court appellate process has begun.  No precedent exists that undermines the court's responsibility to conduct an analysis of the <u>Younger</u> abstention factors.

Third Circuit case law supports the position that if a plaintiff has filed an action or an appeal in state court regarding a land-use regulation, even if that action is stayed, the district court need not consider whether the underlying state proceedings are coercive or remedial in conducting a <u>Younger</u> analysis.  <u>Addiction Specialists</u>, 411 F.3d 399.  The state proceedings in <u>Addiction Specialists</u> were "remedial" because the plaintiff initiated the challenge to the zoning decision and there was no underlying state enforcement proceeding against the plaintiff.[19]  In that case, the Third Circuit decided that the district court was correct in abstaining and did not discuss the remedial/coercive distinction.  <u>Id</u>. The <u>Addiction Specialists</u> court did not discuss this distinction, as the <u>O'Neill</u> court did, because the claims for which abstention was upheld in <u>Addiction Specialists</u> did not involve § 1983 and there was no need to reconcile that holding with an exception to the exhaustion requirement.  Additionally, the <u>Addiction Specialists</u> court likely did not discuss the coercive/remedial distinction because, as in the case at hand, the plaintiff had appealed to the state court and the court did not need to require exhaustion to find a pending state court proceeding.  Here, as in <u>Addiction Specialists,</u> there is no need to use that distinction to reconcile requiring exhaustion with the <u>Patsy</u> holding because this is

_____

[19]  Plaintiffs assert, however, that this proceeding was "coercive" because the Township granted and then rescinded the plaintiff's Change of Use Application under the Municipal Planning Code.  This demonstrates how malleable the coercive/remedial distinction can become.

not a § 1983 case and because Plaintiffs appealed to the state court.  Thus, under

Addiction Specialists, the coercive/remedial distinction is irrelevant to a Younger

abstention analysis when a non-§ 1983 action has been filed in state court and the state's

interest in the litigation is clear.[20]

The line between "coercive" and "remedial" cases is often blurry and has yet to

be defined by the Third Circuit or the Supreme Court.  As previously stated, some courts

have decided whether or not to abstain based only on the remedial/coercive distinction

without considering the Younger abstention factors.   If the issue is remedial, these courts

have held that abstention is *per se* inappropriate.  This has led to inconsistent decisions

because of the malleability of the remedial/coercive distinction.  For example, in two

Eastern District of Pennsylvania cases a township or city issued an order for plaintiffs to

cease an action that violated a regulation.  In both cases, the plaintiffs challenged the

order in federal court.  One court deemed the underlying proceedings remedial because

after receiving the order to cease the plaintiff had applied for an exception to the

regulation.  That court determined that Younger abstention was therefore inappropriate

without further analysis. The other court termed the cease operations order coercive,

conducted a Younger analysis, and abstained.[21]  Additionally, in a decision by the Tenth

---

[20]  As previously discussed, when relevant to the state's interest in the litigation,
the coercive/remedial distinction may be a factor in the second prong of a Younger
analysis.  States have a strong interest in preserving their ability to control coercive
proceedings to enforce a state law or regulation, particularly because they initiated the
litigation.  A state's interest is generally given less weight in a case that is privately
initiated, unless the state's interest is abundantly clear.

[21]  In Remed Recovery Care Centers v. Township of Worcester, No. 98-1799,
1998 WL 437272 at * 3 (E.D.Pa. July 30, 1998), the Township issued Remed (the
plaintiffs) a cease and desist letter directing them to stop the use of a home for disabled

Circuit Court of Appeals, two judges found that a plaintiff's challenge to a state

administrative agency's decision to terminate her medicaid benefits was remedial, and

one found that it was coercive.  Brown v. Day, 555 F.3d 882 (10th Cir. 2009).  These

cases show that it is relatively easy to characterize a case as both remedial and coercive.

**V.  Conclusion**

Abstention under the Younger doctrine is appropriate because the state action is

ongoing, the claims at issue involve an important state court interest that outweighs the

potentially preemptive federal interest, and Plaintiffs had an opportunity to raise these

federal claims in the state courts.  Therefore, this entire proceeding is transferred to the

Court of Common Pleas of Montgomery County where the action is now pending for

adjudication under docket number 08-34173.  Lui v. Comm'n of Adult Entm't

Establishments, 369 F.3d 319, 325 (3d Cir. 2004).

---

persons because they were violating a zoning ordinance.  Id. at *1.  Remed then applied
to the zoning hearing board for a special exception to the ordinance.  Id.  The board
denied the application; Remed then appealed to the court of common pleas and that
action was pending when the federal action was filed.  The court found that the
proceedings were remedial because Remed instigated the state administrative
proceedings and appeal to the state court, despite the fact that the Township first issued a
cease and desist order.  Id. at *3.  The Remed court found that Younger abstention was
inappropriate, even if the three criteria were met, because the state proceedings were
remedial.  Id. at *2-3.

In contrast, in Gentlemen's Retreat, Inc. v. City of Philadelphia, the court found
that a "Cease Operations Order" posted by defendants was a coercive action to enforce a
violation of a regulation.  109 F.Supp.2d 374, 379 (E.D.Pa. 2000).  The Cease Operations
Order shut down plaintiff's business and advised plaintiff of his right to appeal to the
Board of License and Inspection Review.  Instead of filing an appeal, the plaintiff filed
an action in federal court.  Id. at 376.  The Gentlemen's Retreat court cited O'Neill in
determining that the plaintiff's state claim was pending for Younger abstention purposes
even though plaintiff had not sought administrative or judicial review of the Board's
decision.  Id. at 379.  The Gentlemen's Retreat court found that all three Younger
abstention requirements had been met and abstained.  Id. at 380.

## <u>ORDER</u>

**AND NOW**, this ___7th___ day of April, 2009, Defendant Lower Providence

Township's Motion to Dismiss (Doc. #17) and Intervenor Defendant National Center for

the American Revolution's Motion to Dismiss (Doc. #33) are **GRANTED**.  This case is

transferred to the Court of Common Pleas of Montgomery County.

s/Anita B. Brody

_____

_____
ANITA B. BRODY,      J.


Copies **VIA ECF** on _____ to:              Copies **MAILED** on _____ to: